**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

                                    Plaintiff,          Criminal No. 20-207 (JRT/HB)

v.
                                                        **ORDER OVERRULING DEFENDANT'S**
                                                        **OBJECTIONS AND ADOPTING THE**
ROMELLE DARRYL SMITH,                                   **REPORT AND RECOMMENDATION**

                                    Defendant.

Sarah E. Hudleston, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth
Street, Suite 600, Minneapolis, MN 55414, for plaintiff.

Glenn P. Bruder, **MITCHELL, BRUDER & JOHNSON**, 9531 West Seventy-
Eighth Street, Suite 210, Eden Prairie, MN 55344, for defendant.

Defendant Romelle Darryl Smith is charged as a felon in possession of a firearm.

Smith brought motions to suppress the evidence derived from the search and seizure

where police found him in possession of a gun.   Magistrate Judge Hildy Bowbeer

conducted a hearing on the matter and issued a Report and Recommendation ("R&R")

recommending that the motion be denied.   Smith objects to the R&R, claiming (1) that

the R&R wrongfully determined that the police reasonably relied on the information

provided by a confidential reliable informant ("CRI"), and (2) that the police had no reason

to initiate an investigative stop other than Smith's race.   Because the police sufficiently

indicated the reliability of the CRI and because they justifiably relied on the phone

tracking warrant, the Court will overrule Smith's objections and adopt the R&R.

## BACKGROUND

I.    **FACTS**

There are no objections to the factual statements contained in the R&R, which the Court adopts and summarizes here.

On July 16, 2020, Officer Jason Schmitt began investigating a shooting that had taken place that day.  (R&R at 2, July 22, 2021, Docket No. 76.)  Schmitt came to suspect that Jamichael Ramey—a man known to law enforcement—had committed the shooting. (*Id*.)  Schmitt reached out to a CRI who had provided Schmitt with information 25 to 30 times in the past, including accurate information on Ramey pertaining to guns and drugs. (*Id*; Hr'g Tr., 41:25–42:2, July 12, 2021, Docket No. 75; Gov't Supp. Br., Ex. 1 at 4, Sept. 21, 2021, Docket No. 82-1.)  Schmitt asked the CRI for Ramey's phone number so that he could obtain a warrant to track the phone's GPS signal.  (R&R at 2.)  The CRI got back to Schmitt later that day with a cell-phone number the CRI claimed belonged to Ramey.  (*Id.*) Importantly, the CRI informed Schmitt that the CRI had just spoken with Ramey on that number to verify that it was Ramey's.  (*Id.*)  Relying on the information provided by the CRI, Schmitt sought and obtained a warrant from the state court which authorized T-Mobile to provide the police with the cell-phone's GPS tracking information.  (*Id*. at 3.) Two days later police began receiving emails every fifteen minutes (called ping notifications) providing the cell-phone's real-time location.  (*Id.*)

-2-

Schmitt then put together a plan to arrest Ramey. (*Id.*) The plan contained information on Ramey's appearance; it described him as a Black man, approximately 29 years old, 5'11" tall, and weighing 172 pounds. (*Id.*) Based on the location information gathered from the cell phone, Schmitt decided to surveil an apartment building in Minneapolis. (*Id.* at 4.) On July 20, 2020, Schmitt and a team of officers began surveillance of the building. (*Id.*) Schmitt was within eyesight of the building, though he was positioned about 100 to 125 yards down the road and his view was somewhat obstructed by trees and other objects. (*Id.*) While surveilling the area, Schmitt noted certain vehicles he thought were associated with the building including a red GMC Envoy. (*Id.* at 4–5.) He also saw a Black man wearing a black Adidas jacket going in and out of the building that he believed might be Ramey because the man appeared to be in Ramey's age range. (*Id.* at 5.) Beyond that, Schmitt did not believe that the man was acting suspicious. (*Id.*)

After some time, Schmitt was relieved by Officer Adam Lepinski who took over visual surveillance. (*Id.*) Lepinski also noticed the Black man in the Adidas jacket and suspected that he might be Ramey. (*Id.* at 5–6.) Eventually another man, later identified as T.A., exited the building and got into the driver's seat of the GMC and the man in the Adidas jacket got into the passenger seat. (*Id.* at 6.) Lepinski radioed the other officers surveilling the building, telling them that the man he expected to be Ramey was leaving in the passenger seat of the red GMC. (*Id.*) The officers tailed the GMC while Schmitt

-3-

continued to monitor the ping notifications coming from the cell-phone number provided by the CRI. (*Id.* at 6–7.)

While Schmit and Lepinski were surveilling the apartment building, the ping notifications were showing that the phone's location was at or near the building. (*Id.* at 7.) However, for roughly 45 minutes beginning right before T.A. and the man in the Adidas jacket left in the GMC, the ping notifications were coming in blank—that is, the notifications merely said "unknown location." (*Id.*) When the ping notifications began to give information again after the GMC had left the apartment, the location matched the location of the GMC. (*Id.*) At that point Schmitt ordered the officers tailing the GMC to pull it over and arrest the passenger, who Schmitt believed was Ramey. (*Id.*)

After the officers removed the passenger from the car, they learned that he was not Ramey. (*Id.* at 8.) Officers noticed that he had tattoos on his face and the man identified himself as Romelle Smith. (*Id.*) At 5'7" tall and 138 pounds, Smith was smaller and shorter than Ramey. (Hr'g Tr., 48:5–12.)

Smith had a gun on him and an outstanding felony warrant. (*Id.*) Additionally, officers recovered several baggies of methamphetamine from the GMC's center console. (*Id.*) Smith was formally arrested for possession of the gun and on the outstanding warrant. (*Id.* at 8–9.) Later the officers learned that the phone they were tracking belonged to T.A., not Ramey. (*Id.* at 9.) Schmitt testified that he believed Ramey had

-4-

borrowed the phone from T.A., and another officer testified that Smith told him Ramey

had been staying at the apartment building the officers were surveilling.  (*Id.*)

## II.     PROCEDURAL HISTORY

On September 17, 2020, prosecutors charged Smith as a felon in possession of a

firearm.  (Indictment, Sept. 17, 2020, Docket No. 1.)  Smith moved to suppress all evidence

obtained as a direct consequence of the traffic stop.  (Mot. to Suppress Statements, Oct.

14, 2020, Docket No. 28; Mot. to Suppress Evidence, Oct. 14, 2020, Docket No. 30.)  On

July 22, 2021, the Magistrate Judge issued an R&R recommending that the Court deny

Smith's motions.  (R&R.)  On August 5, 2021 Smith objected to the R&R.  (Def.'s Obj. to

R&R. Aug. 5, 2021, Docket No. 77.)

## DISCUSSION

## I.     STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, "a party

may  serve  and  file  specific  written  objections  to  the  proposed  findings  and

recommendations."  Fed.  R.  Civ.  P.  72(b)(2); *accord* D.  Minn.  LR  72.2(b)(1).   "The

objections  should  specify  the  portions  of  the  magistrate  judge's  report  and

recommendation  to  which  objections  are  made  and  provide  a  basis  for  those

objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept.

28, 2008).  "The district judge must determine de novo any part of the magistrate judge's

disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

## II.    ANALYSIS

Smith objects to the R&R on two related grounds: (1) the government did not present sufficient evidence to show that the police were justified in relying on the information provided by the CRI, and therefore (2) the primary basis for the investigative stop was the racial similarities between Smith and Ramey. The Court agrees with the Magistrate Judge's finding that the United States has sufficiently shown the reliability of the CRI's information and that the police reasonably believed the phone they were tracking was Ramey's. Therefore, the primary reason for the seizure was not Smith's race. Accordingly, the Court will adopt the R&R and deny Smith's motions to suppress.

The crux of this issue is the reliability of the information provided by Officer Schmitt's CRI. Police officers may make an investigatory stop if they have reasonable suspicion supported by articulable facts that the stop may lead to the apprehension of a felony suspect. *United States v. Philips*, 679 F.3d 995, 997 (8th Cir. 2012). Even if the police officers' suspicion was mistaken, the government may rely on evidence obtained from the stop provided that the mistake itself was not unreasonable. *Id.* at 998. Mistaking one person for another based purely on age and skin color is not reasonable when they have

significant distinguishing characteristics. Officers Schmitt and Lepinski both suspected that Smith was Ramey when they saw him from a far distance, based on his age and skin color. If that were the only reason for the stop, the Court would not find their mistake to be reasonable. However, Schmitt did not make the call to stop the GMC until after he had verified that the cell-phone location was moving with the vehicle. Therefore, the question is whether Schmitt's reliance on the location associated with the cell-phone number provided by the CRI was reasonable.

When police apply for a warrant based on information proffered by a CRI, the validity of the warrant follows the reliability of that information. *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). The warrant-issuing judge examines the CRI's reliability, veracity, and basis for knowledge holistically to determine the information's reliability. *Id.* Reliability can be established based on the CRI's "track record of providing trustworthy information." *Id.* Officer Schmitt testified that he had relied on this CRI 25 to 30 times in the past and that the CRI had previously provided accurate information on guns and drugs. Moreover, Schmitt testified that after he initially reached out to the CRI, the CRI called him back and said he had spoken to Ramey on that phone number in the interim. The Court finds that sufficient to establish the CRI's reliable track record and supports the reliability of the information provided.[1] The CRI gave Schmitt a

---

[1] Nonetheless, the Court notes its concern with Officer Schmitt's apparently inconsistent testimony, and the lack of information establishing why he thought the CRI would have information on Ramey. In his warrant application Schmitt affirms that the "CRI is familiar with Ramey and **has provided information on Ramey in the past**

cell-phone number that the CRI had just used to speak to Ramey.  It follows logically that the number was Ramey's and that the phone was in Ramey's possession.

Accordingly, the Court finds the officers acted reasonably when they saw someone who they believed might be Ramey and corroborated their suspicion with the GPS location of the phone they believed to be Ramey's.  Therefore, the Court will overrule Smith's objections, adopt the R&R, and deny Smith's motions to suppress.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendant's objection [Docket No. 77] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 76].  **IT IS HEREBY ORDERED** that:

1.  Defendants Motion to Suppress Statements [Docket No. 28] is **DENIED**;

2.  Defendant's Motion to Suppress Evidence [Docket No. 30] is **DENIED.**

DATED:  November 5, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court

---

as possessing firearms and narcotics." (Gov't's Supp. Brief, Ex. 1 at 4 (emphasis added).)  However, on cross examination at the hearing he apparently forgot that fact:  "Q: Before you called your CRI that evening, **had the CRI told you that he was acquainted with Mr. Ramey?**  A: **Not that I can recall.**" (Evid. Hr'g Tr. at 41:16–18 (emphasis added).).  Moreover, Schmitt failed to obtain any information from the CRI as to how the CRI obtained the number he provided Schmitt.  (*Id.* at 43:2–4.)