UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-207 (JRT/HB)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **GOVERNMENT'S POSITION** |
| ) | **WITH RESPECT TO** |
| v. ) | **SENTENCING** |
| ) | |
| ROMELLE DARRYL SMITH, ) | |
| ) | |
| Defendant. ) | |

Defendant Romelle Smith was found carrying a gun in his pocket despite his multiple convictions for violent felonies, including aggravated vehicular hijacking and second-degree assault. The government respectfully asks the Court to sentence Mr. Smith to a term of imprisonment of 188 months. Such a sentence is sufficient but not greater than necessary considering the facts of this case, the history of this defendant and the general objectives of sentencing.

## BACKGROUND

**A. Mr. Smith's Arrest on July 20, 2020**

Mr. Smith was stopped by police because they thought he was Jamichael Ramey, the suspect in a shooting days earlier in which the victim was shot in the face. On the day of his arrest, Smith was at the apartment where Ramey had been staying and was moving in tandem with a phone tied to Ramey. Following the phone pings, police located and pulled over the car Smith was riding in. When police took Mr. Smith out of the car, he told them he had a gun in his pocket, which police retrieved moments later. PSR ¶ 8. Officers quickly realized Smith was not Ramey, but also

learned that Mr. Smith had an active Department of Corrections warrant as well as several felony convictions. PSR ¶¶ 44-49. Mr. Smith was arrested on the warrant and for unlawful possession of a firearm. Mr. Smith was cooperative with law enforcement officers throughout this interaction and honest regarding his possession of the gun, which they greatly appreciated.

Before pulling over the GMC Envoy in which Mr. Smith was riding, one of the responding officers saw Mr. Smith in a gas station parking lot getting out of a different car with someone else inside. Gov't Ex. 1 (Police Report). Mr. Smith appeared to put money in his pocket and then returned to the Envoy, which drove away before being stopped by police. *Id.*; PSR 7. As he witnessed this activity, with more than 20 years in law enforcement and 15-plus years in narcotics investigations, Sgt. Peterson "knew that [he was] watching the conclusion of a narcotics transaction." *Id.*

When officers searched the Envoy post-arrest, they found a blue Tupperware in the center console that contained 14 baggies of methamphetamine, weighing a total of about 16.4 grams. PSR ¶ 8; Gov't Exs. 2, 3 (photos of Tupperware and baggies). Mr. Smith had been in the passenger seat and T.A. was driving. Mr. Smith was at T.A.'s apartment earlier that day before the two left together in the Envoy. Only the Tupperware had a fingerprint impression sufficient for comparison and it was inconclusive as to T.A. and Mr. Smith. The plastic baggies containing the drugs did not have a suitable impression to analyze.

**B. Mr. Smith's criminal and other history**

Prior to this arrest in July 2020, Mr. Smith had four adult felony convictions, as well as a domestic assault misdemeanor conviction. PSR ¶¶44-49. Most recently, Mr. Smith was convicted of Second Degree Assault-Dangerous Weapon-Substantial Bodily Harm that resulted from Mr. Smith shooting a woman in the abdomen at close range, after saying words to the effect of "I'll kill you *itch." PSR ¶ 49. Mr. Smith was sentenced to 45 months in prison. *Id*. After he was released, he absconded five times. *Id*. He was in fugitive status in that case when he was arrested with the gun leading to this prosecution. *Id*.

In addition to charged conduct, Mr. Smith has a history of violence against the mother of his two oldest children, T.T. PSR ¶ 65. T.T. got an Order for Protection against Mr. Smith due to his assaults and threats. *Id*. Mr. Smith suffered abuse himself as a child and grew up amid gang life that led to several juvenile criminal offenses. PSR ¶¶ 63, 64.

Mr. Smith also started using drugs at a young age and has a history of significant drug, including daily use of cocaine and then of methamphetamine. PSR ¶ 72. He has also suffered from mental health trouble since 2006, though he does not want treatment for either this or chemical dependency. PSR ¶¶ 69, 72-73. At age 32, he has never had formal employment, and has made money through musical performing, drug sales, and gambling. *Id*. ¶ 76.

# GUIDELINES

## A. PSR Calculations

The government's position on the Guidelines accords with the calculations of the PSR. The PSR found a total adjusted offense level of 31 and a criminal history of VI, resulting in a Guidelines imprisonment range of 188 to 235 months. PSR ¶ 82. The supervised release term is 5 years to life and the mandatory minimum of 180 months applies pursuant to 18 U.S.C. § 924(e). *Id*. ¶¶ 81, 86.

## B. Issues In Dispute

### 1. Possession of the firearm in connection with a controlled substance offense.

Mr. Smith first objects to the PSR's finding that he possessed the firearm in connection with a controlled substance offense. The preponderance of the evidence shows that Mr. Smith was engaged in drug sales just before he was found with a gun in his pocket and therefore the PSR correctly applied this enhancement. PSR ¶ 22.

Under the Armed Career Criminal Guidelines, a defendant who "used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in §4B1.2(a), or a controlled substance offense, as defined in §4B1.2(b)" receives a base offense level of 34. USSG § 4B1.4(b)(3)(A). This ACC Guideline defines a controlled substance offense is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit

substance) with intent to manufacture, import, export, distribute, or dispense." USSG § 4B1.2 (b). Possession with intent to distribute methamphetamine and distribution of methamphetamine are crimes with penalties of more than one year imprisonment under both federal and state law. *See* 21 U.S.C § 841(b)(1)(C); Minn. Stat. §§ 152.01, Subd. 15a; 151.021, Subd. 1(2)(i); 152.022, Subd. 1(1).

When searching the car after Mr. Smith's arrest, the police found a Tupperware container in the center console containing 16.4 grams of methamphetamine, bagged for sale:





They discovered this bagged meth just after one experienced Sergeant has witnessed Mr. Smith conclude a drug sale in the parking lot of a South Minneapolis gas station. Gov't Ex. 1. Mr. Smith was not employed at the time, has a prior drug conviction, and has made money from selling drugs in the past. PSR ¶¶ 46, 76. Mr. Smith also was using methamphetamine daily at this time, which is be an expensive habit. All of this together makes it more likely than not that Mr. Smith "possessed a firearm … in connection with a controlled substance offense." USSG §§ 4B1.2, 4B1.4(b)(3)(A).

1. **ACCA predicate convictions.**

Mr. Smith further contends that his prior convictions do not qualify as predicates under the ACCA. This contention is readily dismissed. His Illinois carjacking convictions and Minnesota assault conviction all have as elements "the use,

attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e). The plain language of these statutes makes this conclusion irrefutable.

The Armed Career Criminal Act imposes a 15-year mandatory minimum sentence in 922(g) cases if the defendant has three previous convictions for either a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e).  As relevant here, a "'violent felony' means any crime punishable by imprisonment for a term exceeding one year … that—(i)  has as an element the use, attempted use, or threatened use of physical force against the person of another …." *Id*. § (e)(2)(B).

In 2007, Mr. Smith was convicted of Vehicular Hijacking in violation of Illinois statute 720 ILCS 5/18-3. This statute provided that:

> A person commits vehicle hijacking when he or she takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force.

720 ILCS 5/18-3 (2007). In 2009, Mr. Smith was convicted of the aggravated version of this statute, Aggravated Vehicular Hijacking in violation of 720 ILCS 5/18-4(a)(3). Under this law:

> "A person commits aggravated vehicular hijacking when he or she violates Section 18-3; and . . . (3) he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, other than a firearm . . . ."

 720 ILCS 5/18-4(a)(3) (2009).

The plain language of these statutes (which is the same until the aggravated portion) shows they each have as an element the use or threatened use of physical force against another person. To be convicted of either of these crimes the defendant must

take "a motor vehicle *from the person or the immediate presence of another* by *the use of force or by threatening the imminent use of force*." 720 ILCS 5/18-3 (2007, 2009). So, the defendant has to use force or threaten to use force on a person to take the person's car – there is an element of force or threatened force and the ACCA applies.

The Seventh Circuit agrees, finding 720 ILCS 5/18-3, Illinois vehicular hijacking, to be an ACCA predicate. In *United States v. Norris*, 835 F. App'x 892, 893 (7th Cir. 2021), defendant Norris appealed the sentence imposed by the lower court for two federal offenses. The district court sentenced Norris to the statutory minimum under the ACCA, finding his two Wisconsin felonies and his Illinois vehicular hijacking conviction compelled this sentence. *Id.* Norris contended none of the three convictions were violent felonies. *Id.* The Seventh Circuit disagreed. In analyzing 720 ILCS 5/18-3, the court found "there would be no point in arguing that vehicular hijacking in Illinois is not a violent felony," noting that "Illinois defined vehicular hijacking as taking a motor vehicle 'by the use of force or by threatening the imminent use of force.'" *Id.* at 893-94 (citing 720 ILCS 5/18-3). Because of this explicit requirement of force, the court found the statute to be a violent felony under § 924(e). *Id.* at 894; *see also United States v. Andrews*, 419 F. App'x 673, 675 (7th Cir. 2011) (noting the defendant's previous "conviction for vehicular hijacking, [under] 720 ILCS 5/18-3, which is a crime of violence").

Because Illinois Vehicular Hijacking is a violent felony, Illinois Aggravated Vehicular Hijacking necessarily is, too. This law, 720 ILCS 5/18-4(a)(3), contains the same elements as 720 ILCS 5/18-3 and adds in the use of a dangerous weapon. *See*

720 ILCS 5/18-4(a)(3) ("A person commits aggravated vehicular hijacking when he or she violates Section 18-3; and . . . (3) he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, other than a firearm . . ."). Thus, this still has the use or threatened use of force against another and adds the possession of a dangerous weapon as an aggravating element. Without question, it meets the ACCA's definition of a violent felony. 18 U.S.C. § 924(e)(2)(B).

As Mr. Smith concedes, his argument to the contrary is essentially foreclosed by the Eighth Circuit decision in *United States v. Sykes,* where the court found 720 ILCS 5/18-4(a)(3) to be a "crime of violence" under USSG § 2K2.1(a). *See* 914 F.3d 615, 619-620 (8th Cir. 2019). Guideline § 2K2.1(a) defines a crime of violence with the same use of force language as the ACCA and therefore courts use these definitions interchangeably. *See Sykes*, 914 F.3d at 620; USSG §§ 4B1.2(a)(1) (requiring "as an element the use, attempted use, or threatened use of physical force against the person of another."); 2K2.1(a).

In *Sykes*, Sykes pled guilty to being a felon in possession of a firearm. 914 F.3d at 617. At sentencing, the district court applied USSG § 2K2.1(a) and found Sykes' conviction for Illinois Aggravated Vehicular Hijacking was "a crime of violence" that thus enhanced Skyes' base offense level. *Id.* at 620. Sykes contended ILCS 720-5/18-4(a)(3) was not a violent offense "because it does not require, as it must, "force capable of causing physical pain or injury." *Id*.

The Eighth Circuit upheld the district courts application of USSG § 2K2.1(a), relying on the ACCA case of *Stokeling v. United States*, 139 S. Ct. 544 (2019). *Id*. In

*Stokeling*, the Supreme Court noted "that common-law robbery 'has as an element the use, attempted use, or threatened use of physical force against the person of another'" and is thus an ACCA predicate. *Id.* at 620 (citing *Stokeling* 139 S. Ct. at 551). Since the Illinois Aggravated Vehicular Hijacking statute, "adheres to the common-law definition of robbery," the Eighth Circuit held it to be a crime of violence and rejected Sykes' argument. The reasoning and conclusions of *Stokeling* and *Sykes* apply here.

Because both Mr. Smith's Illinois vehicular hijacking convictions meet the definition of a "violent felony' under the ACCA, the PSR properly found the 15-year mandatory minimum applies.

## ARGUMENT

Applying the facts and circumstances of this case to the applicable factors of 18 U.S.C. § 3553(a), demonstrates that imprisonment of 188 months is the appropriate sentence. It is sufficient but not greater than necessary to accomplish the statutory goals of sentencing.

**A. Mr. Smith's history and characteristics, the need to protect the public, and to provide just punishment support a 188- month sentence. (18 U.S.C. § 3553(a)(1), (2))**

Mr. Smith was carrying a gun while riding in a car with drugs and having a warrant for his arrest and multiple violent felony convictions. Thankfully, he was

compliant and not engaged in acts of violence when arrested and these factors mitigate his case.

But Mr. Smith has a history of violent crime, including domestic assault and shooting the girlfriend of his former girlfriend in the stomach at close range. PSR ¶¶44-49, 65. Particularly when combined with his history of drug abuse, mental health trouble, and rejection of treatment, this poses a concerning picture for public safety. Mr. Smith needs chemical abuse treatment and apparently could benefit from mental health treatment as well. The requested sentence will allow him, if he so elects, to participate in RDAP and other rehabilitative programming, thus providing needed correctional treatment. *See* 18 U.S.C. § 3553(a)(32)(D).

> **B. A sentence of 188 months will promote respect for the law, deter future violations, and avoid unwarranted disparities. (18 U.S.C. § 3553(a)(2), (3), (4), & (6))**

A sentence at the low end of the Guidelines will also promote respect for the law and will deter others and Mr. Smith from possessing a gun with a record of violent convictions. The requested sentence will also avoid unwarranted disparities because it is a Guidelines sentence for this case that falls squarely in the heartland of ACC felon in possession cases. Mr. Smith has aggravating facts in his past and mitigating facts in how he conducted himself once approached by police and therefore a sentence at the bottom of his Guidelines range properly balances these considerations.

## CONCLUSION

Based on the foregoing and arguments to be made at sentencing, the United States respectfully asks that the Court sentence the defendant to 188 months of imprisonment, a sentence sufficient but not greater than necessary to effect the objectives of 18 U.S.C. § 3553(a).

Dated: May 10, 2022             ANDREW M. LUGER
United States Attorney

*/s/ Sarah E. Hudleston*

BY: SARAH E. HUDLESTON
Assistant U.S. Attorney